[No. B183049. Second Dist., Div. Eight. Oct. 17, 2006.]

THOMAS PATCHETT, Plaintiff and Respondent, v.
BERGAMOT STATION, LTD., Defendant and Appellant.

**COUNSEL**

Hillel Chodos and Gina M. Putkoski Chodos for Defendant and Appellant.

Cohen, Eagan, Leonard & Parker and Arthur Jarvis Cohen for Plaintiff and Respondent.

OPINION

BOLAND, J.—

## SUMMARY

An arbitrator who issued an award in an initial dispute between the parties did not exceed his powers when, upon one party's demand for a second arbitration, the arbitrator construed the arbitration agreement as authorizing him to act as the arbitrator for subsequent disputes between the parties. We therefore affirm the trial court's judgment confirming the second arbitration award.

## FACTUAL AND PROCEDURAL BACKGROUND

Bergamot Station, Ltd., appeals from a judgment confirming an arbitration award in favor of Thomas Patchett and denying its cross-petition to vacate the award. The arbitration award at issue occurred in the second arbitration between the parties (July 2004 award). Bergamot Station contends the arbitrator, retired Judge Robert W. Thomas, exceeded his powers because Bergamot Station did not agree to Judge Thomas's appointment as the arbitrator for the second arbitration, which was initiated shortly after the issuance of his award in the first arbitration (June 2001 award).

Patchett and Wayne Blank were partners in Bergamot Station galleries in Santa Monica. Disputes arose between them, a lawsuit was filed, and a settlement was reached in 1997. Under the settlement, Blank purchased Patchett's interest in the Bergamot Station property. Patchett was permitted to occupy a portion of the premises rent free, but was responsible for paying common area maintenance (CAM) charges. The settlement provided that disputes of any nature arising from the settlement, including the arbitrability of any claim, would be "settled by one arbitrator, who shall be a mutually-acceptable retired Judge of the California Superior or appellate courts."

In February 2001, Patchett served a demand for arbitration of two issues: his right to hold private events at the premises he occupied, and his right to receive an accounting from Blank of CAM charges levied upon tenants. The parties selected Judge Thomas as the arbitrator. At the arbitration, Patchett sought (1) a declaration he could hold private events on the property and an award of damages for lost events, and (2) an accounting and the return of CAM charges in excess of $125 per month. Judge Thomas issued an award

on June 3, 2001. He found Patchett was entitled to hold private events, but an award of monetary damages was not justified. He further found Patchett failed to meet his burden of proving his CAM charges were not commensurate with those of other tenants, and denied Patchett's request for an accounting of CAM charges "without prejudice." The arbitrator explained: "This does not mean that the Arbitrator has determined that Mr. Blank is entitled to charge tenants for his salary as [manager], his assistant manager's salary, worker's salaries, payroll charges, payroll taxes, insurance and property management fees. Mr. Blank testified that he was advised by [his] accountants that he could pass on these charges. The Arbitrator has just determined that the proof was insufficient in this Arbitration to establish [Patchett's] right to the relief requested. This also is an issue that may have to be determined on another day."

On July 3, 2001, Patchett served another demand for arbitration, styled "Claimant's Renewed Demand for Arbitration Following Arbitration Award." Patchett renewed his demand for an accounting. He specifically requested, among other things, a determination his obligation to pay CAM charges was defined by his sublease; a determination he had no obligation to pay CAM charges, or if he was obligated, certain categories of expenses were excluded; and reimbursement of all improper amounts collected. In letters to the arbitrator dated July 6 and August 21, 2001, Bergamot Station objected to the "re-litigation" of the CAM charges and asserted it would not agree to Judge Thomas's serving as the arbitrator in any new arbitration proceeding.

On August 25, 2001, the arbitrator granted Patchett's motion for renewed arbitration, and denied Bergamot Station's objection to his serving as the arbitrator. The arbitrator's ruling stated that the June 2001 award denied Patchett's request for an accounting of CAM charges without prejudice, and by its terms did not preclude a further determination of the CAM charges issues. The ruling also stated Judge Thomas was mutually selected by the parties under the settlement agreement, which "does not state that a different Arbitrator is to be mutually selected to hear each new set of claims." Thereafter:

—On September 17, 2001, Bergamot Station objected to Judge Thomas's jurisdiction over it in connection with the new arbitration.

—On November 5, 2001, Patchett petitioned to compel arbitration "and to compel arbitration before Judge Robert W. Thomas, Ret."

—On December 6, 2001, Patchett petitioned to confirm the first arbitration award. This petition was later consolidated with his petition to compel the second arbitration. Bergamot Station cross-petitioned to correct the June 2001 award, to state the CAM charges claim was denied "with prejudice," and to confirm the award as corrected. The cross-petition also sought dismissal of Patchett's petition to compel arbitration before Judge Thomas.

—On August 5, 2002, the trial court (Judge Fumiko Wasserman) granted Patchett's petition to confirm the June 2001 award "that [Patchett] has the right to hold private events . . . ." The trial court also granted Patchett's petition for renewed arbitration on the issue of an accounting, as well as his petition to compel the renewed arbitration before Judge Thomas.

—Bergamot Station's later petition to the Court of Appeal for a writ of prohibition or writ of mandate to set aside the trial court's order was denied.

—Bergamot Station appealed on October 1, 2002. Thirteen months later, on October 30, 2003, Bergamot Station's appeal was dismissed "[p]ursuant to stipulation . . . ."

The second arbitration was held in May and June 2004. In July 2004, the arbitrator found that Bergamot Station could not redefine Patchett's sublease to include the substantially broader definition of CAM charges that appeared in the leases of other tenants. As a result, Bergamot Station's increase in CAM charges to Patchett from $125 per month to $1,430 per month was not justified. The July 2004 award set CAM charges for Patchett at $488.20 per month; awarded Patchett $39,795.40 as excessive CAM charges; and further awarded Patchett attorney fees of $45,724 and costs of $8,130.25.

Patchett petitioned to confirm the July 2004 award, and Bergamot Station cross-petitioned to vacate the award. On March 29, 2005, the trial court (William F. Fahey) confirmed the award. The court found the arbitrator had jurisdiction of the controversy and did not exceed his authority.[1]

---

[1] The trial court (Judge Fahey) also found Bergamot Station's failure to contest the jurisdiction of the arbitrator, either before the arbitrator or before the trial court (Judge Wasserman), waived the argument "at this late date," and Bergamot Station was equitably estopped from making its jurisdictional argument. The court's reference to a failure to contest jurisdiction refers to Bergamot Station's principal argument below (not renewed on appeal) that the arbitrator "lacked subject matter jurisdiction to issue any ruling in connection with" Patchett's sublease, which had no arbitration clause and which figured prominently in the arbitrator's decision.

Judgment was entered confirming the award on April 25, 2005, and Bergamot Station filed a timely appeal.

## DISCUSSION

Bergamot Station contends the arbitrator's July 2004 award exceeded his powers. In essence, it argues the arbitrator had no authority to act because Bergamot Station did not agree to his "reappointment" for the second arbitration. We find no merit in this claim.[2]

Preliminarily, Patchett's demand for the second arbitration was styled a "renewed" demand for arbitration, and Bergamot Station contends that "renewed arbitration" is a "procedure heretofore unknown in the statutes" and is therefore improper. We discern no legal significance in the term "renewed." While use of the term "renewed" was imprecise and inaccurate, its use cannot affect the underlying facts, which are these:

—Patchett demanded a second arbitration.

—The arbitrator before whom the demand was filed determined he was authorized to arbitrate the matter.

—When Bergamot Station refused, Judge Wasserman ordered it to arbitrate before Judge Thomas.

—Bergamot Station appealed Judge Wasserman's order.

—After the appeal was pending for more than a year and was briefed by both parties, the parties requested a dismissal. The Court of Appeal dismissed the appeal and issued a remittitur.

---

[2] Bergamot Station also repeatedly asserts that (1) the June 2001 award did not fully dispose of all the issues, and therefore "must be vacated because it failed to determine all issues," and (2) the second award was an unauthorized amendment or alteration of the first award. Both assertions are without basis. The first award was confirmed and is no longer subject to review. The second award did not alter or amend the first award, which, on the CAM issue, found Patchett failed to establish his CAM charges were not commensurate with those of other tenants and denied an accounting "without prejudice." The second award was based on a finding that the nature of the CAM charges for which Patchett was responsible was significantly different from those applicable to other tenants. Contrary to Bergamot Station's claim, the second award does not "vitiate" the first.

Under these facts, we discern no basis for concluding the arbitrator was without authority to act in the second arbitration. This is so for both procedural and substantive reasons.

■ First, the procedural reason: The arbitrator determined he was authorized to act; Judge Wasserman concluded the arbitrator had the authority to act; Bergamot Station appealed Judge Wasserman's order; and 13 months later, Bergamot Station changed course and stipulated to dismissal of the appeal. At this late date, we cannot permit Bergamot Station to assert that Judge Wasserman's order was, after all, not appealable, and therefore it may now, for a second time, challenge her order on appeal. Judge Wasserman's order may well not be appealable. (*Atlas Plastering, Inc. v. Superior Court* (1977) 72 Cal.App.3d 63, 67 [140 Cal.Rptr. 59] [an order directing parties to arbitrate is nonappealable, and is reviewable on appeal from a judgment confirming the award].) However, Division Two of this court did not dismiss the appeal on that basis. Bergamot Station resisted arbitration by taking an appeal from the order, which the parties briefed and which was pending for more than a year before the parties stipulated to dismissal for reasons not stated in the record. The Court of Appeal may well have adjudicated the issue had the parties not dismissed the appeal; even when an order is not appealable, Courts of Appeal not infrequently treat an appeal as a writ and determine the issue presented. (E.g., *Allstate Ins. Co. v. Superior Court* (2006) 142 Cal.App.4th 356, 358 [48 Cal.Rptr.3d 266]; see *Olson v. Cory* (1983) 35 Cal.3d 390, 400–401 [197 Cal.Rptr. 843, 673 P.2d 720].) In short, having spent more than a year prosecuting an appeal from Judge Wasserman's order, Bergamot Station should have expressly delineated the basis for the requested dismissal if it wished to preserve its objection to the order. Not having done so, Bergamot Station is bound by Judge Wasserman's order. (Cf. Code Civ. Proc., § 913 ["dismissal of an appeal shall be with prejudice to the right to file another appeal within the time permitted, unless the dismissal is expressly made without prejudice to another appeal"]; see also former Code Civ. Proc., § 955, repealed by Stats. 1968, ch. 385, § 1, p. 811 [dismissal of an appeal was "in effect an affirmance of the . . . order appealed from" unless expressly made without prejudice to another appeal]; *In re Estate of Rose* (1889) 80 Cal. 166, 171 [22 P. 86] [bar of former Code Civ. Proc., § 955 would apply where the dismissal was for want of prosecution, unless expressly made without prejudice]; *Howard v. Howard* (1927) 87 Cal.App. 20, 26 [261 P. 714] [even in the absence of the statute, necessary effect of dismissal of appeal for failure of appellant to prosecute is "to leave the judgment as though no appeal had been taken, and the judgment of the trial court then stood unassailed"; it is "manifest that this had the same effect . . . as would have followed had the supreme court disposed of an appeal perfected, heard, and affirmed"].) Judge Wasserman's order, thus, was final.

■ Second, the substantive reason: Even if a second appeal of Judge Wasserman's order were appropriate, we would still be compelled to conclude the arbitrator did not exceed his powers. When Patchett demanded a second arbitration, the arbitrator interpreted the settlement agreement to mean that the arbitrator mutually selected by the parties was to decide all claims; as the arbitrator stated the point, the agreement "does not state that a different Arbitrator is to be mutually selected to hear each new set of claims."[3] This court cannot conclude, as a matter of law, that the arbitrator's construction of the agreement was erroneous. The parties expressly agreed that all controversies "of whatever nature . . . in relation to the interpretation . . . of [the] Agreement . . . , including without limitation . . . the arbitrability of any claim" would be settled by arbitration. In other words, this is a case in which the parties " 'have conferred upon the arbiter the unusual power of determining his own jurisdiction' . . . ." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375 [36 Cal.Rptr.2d 581, 885 P.2d 994], quoting *McCarroll v. L. A. County etc. Carpenters* (1957) 49 Cal.2d 45, 65–66 [315 P.2d 322].) While the arbitrator's interpretation of the arbitration clause does not, strictly speaking, address the question of arbitrability—which involves the arbitrator's authority over the subject matter of the dispute—it is substantively no different, as it necessarily concerns the individual arbitrator's jurisdiction over the dispute. Consequently, we see no merit in Bergamot Station's claim that the settlement agreement did not authorize the arbitrator "to rule on his own jurisdiction to hear subsequent disputes . . . ." On the contrary, an agreement that grants the arbitrator the power to decide any controversy "of whatever nature . . . in relation to the interpretation" of the agreement, expressly including the jurisdictional issue of arbitrability, logically and necessarily gives the arbitrator the power to interpret the agreement provisions governing arbitral selection.[4] (Cf. *Ajida Technologies, Inc. v. Roos*

---

[3] The arbitration clause provides: "The Parties hereby agree that . . . each claim, dispute or controversy of whatever nature . . . in relation to the interpretation, construction, application, performance, breach or enforcement of this Agreement . . . , including without limitation . . . the arbitrability of any claim hereunder (an 'Arbitrable Claim'), shall be settled by final and binding arbitration . . . . All such Arbitrable Claims shall be settled by one arbitrator, who shall be a mutually-acceptable retired Judge of the California Superior or appellate courts."

[4] Bergamot Station asserts that the construction of the settlement agreement is a matter of law reviewed de novo by this court, citing *American Home Assurance Co. v. Benowitz* (1991) 234 Cal.App.3d 192, 200 [285 Cal.Rptr. 626]. Bergamot Station misapprehends the applicability of *Benowitz* to this case. *Benowitz* held that an arbitration award was obtained without legal authority when one party unilaterally selected an arbitrator and proceeded with arbitration in the absence of the other party. The arbitration clause stated only that arbitration would be conducted by a single neutral arbitrator. The Court of Appeal found the term " 'neutral arbitrator' " was a term of art, defined by statute as an arbitrator selected jointly or appointed by the court. (*Id.* at pp. 199–200.) No dispute existed over the provisions of the contract or the statute, and the Court of Appeal merely indicated that appellate courts are not bound by a trial court's construction of a statute, a contract, or an arbitration provision in a contract. (*Id.* at p. 200.) By contrast, the parties in this case expressly agreed that all matters related to

*Instruments, Inc., supra,* 87 Cal.App.4th at pp. 542–543 [courts apply a rule of substantial deference to an arbitrator's jurisdictional determinations].)

 Bergamot Station insists the parties' agreement that all arbitrable claims "shall be settled by one arbitrator, who shall be a mutually-acceptable retired Judge" did not mean that the parties would pick one arbitrator "for life." Instead, Bergamot Station contends, the parties merely meant that each dispute would be settled by one arbitrator rather than three, and that a new arbitrator (or further consent) is required for each new dispute. While the language of the arbitration clause may be susceptible to the meaning Bergamot Station suggests, it is equally susceptible to the meaning given it by the arbitrator. There is nothing irrational about agreeing to have all disputes decided by the same arbitrator, whose accumulation of information about the transaction and the parties may well present significant efficiencies redounding to the benefit of both parties. In any event, it is not for this court to determine the parties' intent when they wrote those words. As we have discussed, the parties gave the arbitrator the authority to decide all controversies "of whatever nature . . . in relation to the interpretation . . . of [the] Agreement . . . ." The parties' attorneys drafted the agreement; the parties selected Judge Thomas; and Judge Thomas interpreted the agreement to mean he had been selected to determine all disputes that might arise between the parties—an interpretation perfectly consonant with the language used by the parties. Even if, as Bergamot Station asserts, this interpretation of the agreement was not as the parties intended, an arbitrator does not exceed his powers because of errors of fact or law. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

 Finally, Patchett contends he is entitled to sanctions because Bergamot Station's appeal is "frivolous, meritless, and malicious." While we find no merit in Bergamot Station's contentions, we cannot say, given the lack of factually apposite precedent, that the appeal was frivolous. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179] [appeal is frivolous only when it is prosecuted for an improper motive or when any reasonable attorney would agree it was totally and completely without merit].)

---

interpretation of the settlement agreement, including questions of arbitrability, would be settled by arbitration. The parties thereafter presented the jurisdictional issue to Judge Thomas. He ruled on the issue, and then, with both parties participating, proceeded to decide the case on the merits. The de novo review that we conduct is " 'a de novo review, independently of the trial court, of the question whether the arbitrator exceeded the authority granted him by the parties' agreement to arbitrate. [Citations.]' " (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541 [104 Cal.Rptr.2d 686], quoting *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 945 [75 Cal.Rptr.2d 1].) In this case, he did not.

## DISPOSITION

The judgment is affirmed. Thomas Patchett is entitled to recover his costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 14, 2007, S148350. Chin, J., was of the opinion that the petition should be granted.