Filed 8/19/20  Schrage v. Schrage CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LEONARD SCHRAGE, | B288478 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC579623) |
| v. | |
| MICHAEL SCHRAGE et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joanne O'Donnell, Judge.  Modified and affirmed.

Randall S. Waier for Defendants and Appellants.

Manatt, Phelps & Phillips, Benjamin G. Shatz, and Kishan H. Barot; Pearl Cohen Zedek Latzer Baratz and Steven M. Goldberg for Plaintiff and Respondent.

# INTRODUCTION

Leonard Schrage filed this action against his two brothers, Michael and Joseph Schrage, for involuntary dissolution of the family business. After invoking their statutory right to buy Leonard's interests in the business pursuant to a court-ordered appraisal, Michael and Joseph declined to complete the purchase. The trial court granted Leonard's motion to recover attorneys' fees and other expenses he incurred in the ultimately fruitless appraisal process and in obtaining injunctive relief during the appraisal process to protect the business from misconduct by Michael and Joseph.

Michael and Joseph argue the trial court erred in awarding the attorneys' fees Leonard incurred in obtaining the injunctive relief because the relevant buyout statutes authorize the court to award only those attorneys' fees and expenses incurred in the appraisal process. They also argue that Leonard did not submit admissible evidence of his attorneys' fees and expenses, that the judge who granted Leonard's motion lacked jurisdiction to rule on it after the judge who first heard the motion became unavailable, that the court erred in making the award against Michael and Joseph's surety, and that the dissolution order was improper. We conclude Leonard was not entitled to recover his injunction-related attorneys' fees, strike that portion of the expense award, reject Michael and Joseph's other arguments, and affirm the order as modified.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *Leonard Sues His Brothers To Dissolve the Family Business*

Leonard, Michael, and Joseph each owned a one-third interest in the Sage Automotive Group, a family-owned car dealership business founded by their father.  In April 2015 Leonard filed this action against Michael, Joseph, and 14 corporate entities in the Sage Automotive Group to dissolve and wind up those entities.  Leonard alleged Michael and Joseph engaged in a pattern of self-dealing and mismanaged the business by, among other things, misappropriating company assets to fund a separately held car dealership and pay for lavish personal expenses, making business decisions without Leonard's consent, and denying Leonard access to corporate books and records.  Leonard sought to dissolve five corporations under Corporations Code section 1800,[1] eight limited liability companies under section 17707.03, and one limited partnership under section 15908.02.  Leonard requested an order distributing the assets of each entity equally among the brothers and an order appointing a receiver to manage and preserve the assets of the business during the pendency of the action.  Leonard also sought compensatory and punitive damages against Michael and Joseph for breach of fiduciary duty.

---

[1]     Undesignated statutory references are to the Corporations Code.

B.	*The Trial Court Enjoins Michael and Joseph from Misusing Business Assets*

On August 18, 2015, shortly after filing a first amended complaint, Leonard filed a motion asking the court to appoint a receiver. On December 15, 2015 the trial court denied the motion, but issued a preliminary injunction (1) prohibiting Michael and Joseph from using any funds, assets, or employees of any of the entity defendants for the benefit of Michael and Joseph's separate dealership and (2) requiring a court-appointed independent examiner to approve any loan or expense reimbursement any of the parties requested. The court found injunctive relief was necessary in light of evidence Michael and Joseph had "used Company money to live the 'high life,' and did so partly at Leonard's expense."

C.	*Michael and Joseph Invoke Their Statutory Rights To Purchase Leonard's Interests in the Business*

In June 2016 Michael and Joseph filed an ex parte application under sections 2000, 15908.02, and 17707.03 to stay the dissolution action and to determine the value of Leonard's interest in the entity defendants. Michael and Joseph argued that, under the shareholder buyout provisions of section 2000, the defendants in an involuntary dissolution action may elect to purchase the plaintiff's interests at a fair value determined by appraisers and confirmed by the court and that during the buyout process the court had to stay the dissolution. In their supporting declarations Michael and Joseph affirmed that they each held a one-third interest in the Sage Automotive Group and that they had elected to purchase all of Leonard's interests in the entity defendants.

4

After the court denied their ex parte application, Michael and Joseph filed a noticed motion seeking the same relief. As required by the statutory buyout provisions, Michael and Joseph posted a $1 million bond underwritten by their surety. On August 23, 2016 the trial court stayed Leonard's three dissolution causes of action (one for each legal form of business ownership) to allow Michael and Joseph to proceed on their election to purchase Leonard's interests in the business. The court did not stay Leonard's breach of fiduciary cause of action or Michael and Joseph's causes of action in their cross-complaint for breach of fiduciary duty, conversion, and recording confidential communications in violation of Penal Code sections 630 and 632.[2] The parties subsequently stipulated to having a retired judge serve as the referee to oversee and adjudicate all aspects of the appraisal process. The parties also entered into a stipulation and order governing the appraisal process that provided, among other things, the appraisal and buyout would cover the 14 entity defendants named in the first amended complaint, plus five additional limited liability companies (collectively, the buyout entities).

---

[2]     We augment the record to include the court's August 23, 2016 order. (See Cal. Rules of Court, rule 8.155(a)(1)(A).) The court also ruled that discovery was not stayed "as to the other causes of action, cross-claims, or other matters outside of the winding up and dissolution claims and proceedings" and that the appraisers could request any discovery they needed regarding the dissolution causes of action.

5

D.  *The Trial Court Issues a Second Injunction After Michael and Joseph Violate the First One, and Then a Third Injunction After They Violate the Second*

On August 9, 2016, shortly before the trial court stayed the dissolution proceeding, Leonard filed an ex parte application for additional injunctive relief, claiming Michael and Joseph violated the original injunction and asking the court to bar them from managing the business.  On November 28, 2016, following a three-day hearing and extensive briefing, the trial court issued a second preliminary injunction that prohibited any transfer of assets or funds from any of the entity defendants without Leonard's prior written consent.  The court found Michael and Joseph intentionally violated the December 2015 injunction by, among other acts, transferring company assets to their separate dealership and using intercompany loans to purchase another car dealership without approval of the independent examiner.  The court further found that Michael and Joseph fabricated corporate records to disguise transfers and fraudulently characterized loans as investments and that their claimed ignorance of the transactions was not credible.  The court also rejected the argument by Michael and Joseph that the injunction violated the stay under the buyout statutes.  The court ruled that "[s]imply because the winding up and dissolution proceedings are stayed does not mean that Leonard cannot move to protect his interests by way of a preliminary injunction in the meantime."

On March 30, 2017 Leonard filed an ex parte application seeking to hold Michael and Joseph in contempt of the December 2015 and November 2016 injunctions.  Leonard claimed Michael and Joseph continued to violate the first and second preliminary injunctions by misusing company funds to pay for their personal

6

expenses.  On July 12, 2017, following a five-day hearing, the trial court issued a third preliminary injunction against Michael and Joseph.  The court found that a receivership was warranted because the continuing violations by Michael and Joseph of the two prior injunctions were endangering Leonard's interests in the business.  Instead of appointing a receiver, however, the court enjoined Michael and Joseph from directly or indirectly exercising any management authority over the entity defendants.  The court also ruled Michael and Joseph could move to terminate the injunction if they acquired Leonard's interests in the businesses through the statutory buyout procedure.

>     E.     *Appraisers Value Leonard's Interest in the Business at $40 Million, Which Michael and Joseph Do Not Pay*

On July 25, 2017, following a lengthy appraisal process, the referee confirmed that the value of Leonard's interests in the buyout entities was $40,237,000 and stated that, if Michael and Joseph did not pay Leonard that amount by September 11, 2017, the entities would be wound up and dissolved.  The referee stated that, under the stipulation and order, the referee's findings were "'final' and 'all parties [have] expressly waive[d] any right to contest, challenge, or object to such rulings before'" the court.  The referee concluded, "Accordingly, the Court should enter this order as a final order of the Court without further hearings."  On July 28, 2017 the trial court approved the referee's recommendation and entered it as the court's order.

Michael and Joseph did not pay Leonard by the deadline.  On September 27, 2017 the trial court appointed a receiver to wind up and dissolve the buyout entities.

F. *The Trial Court Awards Leonard His Attorneys' Fees and Expenses, Including Those Relating to the Second and Third Preliminary Injunctions*

On September 26, 2017 Leonard filed a motion under the buyout statutes to recover his attorneys' fees, his share of the referee's fees, and other expenses. Leonard sought to recover from Michael, Joseph, and their surety $962,903.13 in expenses, consisting of $22,500 in referee fees, $379,009.50 in appraisal-related attorneys' fees, and $561,393.63 in injunction-related attorneys' fees. Leonard argued that, under the statutory buyout procedures, he was entitled to recover the full amount of his expenses and fees because Michael and Joseph failed to purchase his interests in the Sage Automotive Group by the court-ordered deadline. Leonard also argued he could recover the attorneys' fees he incurred in obtaining the additional preliminary injunctive relief because he sought that relief to protect his interests in the business pending the completion of the appraisal process. Counsel for Leonard submitted an invoice and a spreadsheet documenting the services his law firm rendered during the buyout appraisal proceeding.

In opposition to the motion, Michael and Joseph argued Leonard could not recover the attorneys' fees he incurred in seeking the additional preliminary injunctive relief because he did not incur those expenses as part of the appraisal process. Michael and Joseph also argued the amount of attorneys' fees Leonard requested was unreasonable because he was seeking to recover all of the fees he incurred since June 2016, which was before the appraisal process began. Michael and Joseph also argued the referee, not the court, should determine the

8

reasonableness of any attorneys' fees Leonard was entitled to recover.

At the October 19, 2017 hearing on the motion, Judge Yvette Palazuelos provided the parties with a tentative ruling that awarded Leonard a portion of the expenses he requested, but did not award Leonard the attorneys' fees he incurred in litigating the requests for additional preliminary injunctive relief. Counsel for Michael and Joseph agreed with the court's tentative ruling that the fees Leonard incurred in seeking the second and third preliminary injunctions were not recoverable. Counsel for Leonard urged the court to include those fees in the expense award because the additional "injunctions were necessary to preserve the status quo during this very extended buyout process." Judge Palazuelos took the matter under submission, but never issued a ruling.[3]

At some point, and no later than December 8, 2017, Judge Joanne O'Donnell began ruling on motions in the case. For example, on December 8, 2017 Judge O'Donnell granted an ex parte request by the receiver to approve the sale of the assets,

---

[3] The record on appeal does not disclose why Judge Palazuelos did not issue a final ruling on the motion. Michael and Joseph have filed a motion in this court to augment the record with a copy of the minute order for the October 19, 2017 hearing and a copy of Judge Palazuelos's tentative ruling. We grant the motion as to these two documents. (Cal. Rules of Court, rule 8.155(a)(1)(A).) Judge Palazuelos's tentative ruling, however, was not a final order, and Michael and Joseph cannot use it to impeach the ultimate order on Leonard's motion for attorneys' fees and expenses. (See *FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1284; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268.)

property, and business of one of the dealerships. On December 15, 2017 she heard an ex parte application by Leonard to continue the trial. And on December 29, 2017 she granted a motion by the receiver for authorization to establish the procedure for resolving claims against the various business entities.

On December 29, 2017 Judge O'Donnell also issued a written ruling granting Leonard's motion for expenses Judge Palazuelos had heard in October and awarding Leonard all of the expenses he sought, including the injunction-related attorneys' fees. Judge O'Donnell rejected the arguments by Michael and Joseph that Leonard's request for fees was unreasonable and that the referee should determine the amount of the award. Judge O'Donnell also rejected the argument that the injunction-related fees were not recoverable under the buyout statutes, ruling: "The Court will not interpret the statute[s] in the narrow and constrictive manner suggested by Defendants. The fees incurred by Plaintiff were incurred during the appraisal process and were incurred due to the actions and tactics employed by Defendants. [Citation.] The Court has been required to intervene numerous times due to Defendants' actions, only to see Defendants fail again to consummate the buyout despite their frequent reassurances to the Court and Plaintiff that they would do so. [¶] Accordingly, Plaintiff is entitled to his expenses under the language of the Buyout Statutes against Defendants and their Surety. Plaintiff is entitled to all expenses incurred as a result of Defendants' failed buyout election, including those expenses

incurred due to trial delays and the need for interim relief."

Michael and Joseph appealed.[4]

## DISCUSSION

A.    *The Statutory Buyout Provisions*

The statutory buyout provisions of the Corporations Code provide a defendant in an involuntary dissolution action with a mechanism for avoiding the dissolution by purchasing the plaintiff's shares or other interests.  (*Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1481, 1486-1487; see *Panakosta, Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 628-629 [applying § 15908.02 governing limited partnerships].)  Section 2000, subdivision (a), which applies to corporations, states that, "[i]n any suit for involuntary dissolution, . . . the corporation or, if it does not elect to purchase, the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the

---

[4]    Although the order is not appealable under Code of Civil Procedure section 904.1, subdivision (a)(2), as a postjudgment order awarding attorneys' fees (see *Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 305 [order denying attorneys' fees was not appealable under Code of Civil Procedure section 904.1 because it was not postjudgment]), it is appealable under sections 2000, subdivision (c), 15908.02, subdivision (d), and 17707.03, subdivision (c)(3), each of which authorizes an appeal from an "action of the court" under the statute.

11

shareholders so initiating the proceeding (the 'moving parties') at their fair value." If the parties are unable to agree on the fair value of the shares, and the purchasing parties post a bond with sufficient security to pay the moving parties' estimated reasonable expenses, "the court upon application of the purchasing parties . . . shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties." (§ 2000, subd. (b).)

Section 2000, subdivision (c), prescribes the procedure for determining the fair value of the shares and the relief available to the moving parties if the shares are not purchased. That provision states in relevant part: "The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining the value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or of a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree, which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree." Sections 17707.03 and 15908.02 contain substantively identical buyout provisions for limited liability companies and limited partnerships, respectively.

The buyout statutes provide that, to invoke the statutory buyout procedure and obtain a stay of the dissolution proceeding, the purchasing parties must "give bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties if those expenses are recoverable" under

12

subdivision (c).  (§ 2000, subd. (b); see §§ 15908.02, subd. (c), 17707.03, subd. (c)(2).)  In the event the purchasing parties fail to purchase the moving parties' shares or interests at the appraised fair value, the buyout statutes authorize the moving parties to recover the reasonable expenses and attorneys' fees they incurred.  For example, in the case of corporations, the relevant sentence of section 2000, subdivision (c), states:  "If the purchasing parties do not make payment for the shares within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the moving parties."

The statutory buyout procedure is "a special proceeding" that, "once initiated, 'supplants' a cause of action for involuntary dissolution." (*Ontiveros v. Constable* (2018) 27 Cal.App.5th 259, 264; see *Goles v. Sawhney* (2016) 5 Cal.App.5th 1014, 1018.)  "In such a proceeding, [the] purchasing parties aspire to buy out the moving party, with minimal expenditure of time and money that would otherwise be spent in litigation, in order to preserve the corporation.  If they . . . cannot pay the purchase price, or decide not to do so, then both sides must walk away, receiving pro rata the proceeds resulting from dissolution of the corporation.  On the other hand, if the purchasing parties tender the amount determined by the court, the moving party cannot reject the share price as being too low." (*Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522, 531 (*Go*).)  The buyout procedure "does not determine whether the corporation should be dissolved, but instead, provides the plaintiff and defendant with a statutory remedy without [a] trial" on the merits.  (*Ontiveros*, at p. 277.)

13

B. *The Trial Court Erred in Awarding Leonard His Attorneys' Fees Incurred in Litigating the Second and Third Preliminary Injunctions*

Michael and Joseph argue the trial court erred in awarding over half a million dollars in attorneys' fees Leonard incurred "'outside' of the appraisal process" to obtain the second and third preliminary injunctions. They assert that, under the buyout statutes, the court can only award fees and expenses incurred as part of the appraisal process and that, because Leonard's injunction-related attorneys' fees arose outside the appraisal process, he was not entitled to recover those fees as part of his expense award.

1. *Applicable Law and Standard of Review*

""When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act

14

in pursuance of the legislative purpose.""'" (*Hassell v. Bird* (2018) 5 Cal.5th 522, 540; see *In re A.N.* (2020) 9 Cal.5th 343, 351-352; *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

We generally review an award of attorneys' fees for abuse of discretion. (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.) "'Fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award.'" (*Ibid*.) ""However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law."'" (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.) "In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.'" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

> 2. *The Buyout Statutes Limit the Recovery of Expenses and Fees to Those Incurred in the Appraisal Process*

The buyout statutes do not define the nature of the attorneys' fees and other expenses the moving parties may recover if the purchasing parties do not buy out the moving parties at the appraised value. The statutes simply provide that, if the purchasing parties do not make a timely payment, the moving parties are entitled to recover their reasonable expenses, including attorneys' fees. (§§ 2000, subd. (c), 15908.02, subd. (d), 17707.03, subd. (c)(3); see *Cotton v. Expo Power Systems, Inc.*

15

(2009) 170 Cal.App.4th 1371, 1376 ["If the purchasing parties do not pay for the shares within the specified time, they are charged with the expenses of the moving parties, including attorneys' fees."].)  But the framework of the statutory buyout provisions and the relevant legislative history show that the Legislature intended the moving parties to recover only those fees and expenses incurred in the appraisal process.

The provision governing the recovery of expenses in each of the buyout statutes appears in the paragraph describing the appraisal process.  (§§ 2000, subd. (c), 15908.02, subd. (d), 17707.03, subd. (c)(3).)  In addition to prescribing the procedure for appointing the appraisers, confirming the appraisal award, and entering the alternative decree, the paragraph authorizes the moving parties to recover their attorneys' fees and other expenses if, at the end of the appraisal process, the purchasing parties elect not to buy the moving parties' interests at the price fixed by the court after the appraisal.  The placement of the expense provision in the subsection of the statute governing the appraisal process suggests the Legislature intended to limit the recoverable expenses to those incurred in the appraisal process.  (See *The Internat. Brotherhood of Boilermakers, etc. v. NASSCO Holdings Inc.* (2017) 17 Cal.App.5th 1105, 1119-1120 ["we do not consider the statutory words in isolation; we must read the language as it is placed in the code section, and in the context of the entire statutory scheme"]; *Conrad v. Medical Bd. of California* (1996) 48 Cal.App.4th 1038, 1046 [in interpreting statutory language, courts consider "its placement within an overall statutory scheme"]; see, e.g., *City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 401 [where an attorneys' fees provision was placed in a subdivision of a code section relating to

16

receivership proceedings, and "not placed as its own subdivision in [the] section," prevailing party attorneys' fees were limited to receivership proceedings].)

This interpretation is consistent with the statutes' purpose of reimbursing the moving parties' expenses incurred in an appraisal process that did not end in a buyout. When the purchasing parties invoke a statutory buyout provision, the parties take a break from litigating the merits of the dissolution action, which is stayed, and turn their attention and resources to calculating by appraisal the fair value of the moving parties' interests. If the purchasing parties complete the purchase at the appraised fair value, the cost of the appraisal is money well spent. But if the purchasing parties dispute the appraised fair value, cannot afford to pay it, or otherwise choose dissolution over acquisition, the moving parties have spent time and money in the appraisal for naught. Section 2000, subdivision (c), like the similar provisions for limited liability companies and partnerships, imposes the costs of the appraisal process on those who initiated the failed buyout procedure, i.e., the purchasing parties. As the court in *Go* explained: "The objective of the statutory appraisal process is to find a fair value for the shares of the parties seeking dissolution and to award the [moving parties] seeking dissolution the liquidation value they would have received had their dissolution action been allowed to proceed to a successful conclusion. If the purchasing parties believe the price fixed by the court is too high, they can refuse to purchase the shares at that price and permit the winding up and dissolution of the corporation to proceed. Their only liability would be to pay the expenses (including attorney fees) incurred by the moving parties in the appraisal process." (*Go*, *supra*, 179 Cal.App.4th at

17

p. 531; accord, *Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 75 (*Trahan*);[5] see Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2019) ¶ 8:887 [under section 2000, purchasing parties may "back out of the purchase if they feel the price fixed by the court is too high," but "they will have to pay all reasonable expenses (including attorney fees) incurred by the other parties"]; Marsh et al., Cal. Corporation Law (2020 supp.) Dissolution, § 21.07 [if the purchasing party "is not willing to pay the amount determined in the appraisal process" and elects to proceed with dissolution, "he is required to pay all of the expenses of the moving parties in the appraisal proceeding, including their attorneys' fees"]; *ibid.* ["unless the payment is made for the shares and the purchase consummated, the parties initiating the dissolution proceeding have a right to collect the entire amount of their expenses in the appraisal proceeding from the shareholders making the election and the surety or sureties on the bond furnished by such shareholders"].)[6]

---

[5] The court in *Go* held section 2000 requires the court to enter an alternative decree once the court has confirmed the fair value of the corporation's shares. (*Go, supra,* 179 Cal.App.4th at pp. 529-530.) The court in *Trahan* held the trial court did not err "in confirming the award of the appraiser where the appraiser did not take into account the profits, if any, from contracts which had not been completed by the valuation date." (*Trahan, supra,* 99 Cal.App.4th at p. 70.)

[6] Law professor Harold Marsh, Jr. was a member of the State Bar Corporations Committee and the "principal draftsman" of the 1975 revisions to the Corporations Code that included section 2000. (Comr. Willie R. Barnes, Dept. of Corporations, letter to Assemblymember John Miller, Chair Assem. Judiciary

The legislative history of the buyout statutes supports limiting the recovery of fees and expenses to those incurred in the appraisal process.  The predecessor to section 2000 did not authorize the moving party to recover any fees or expenses in the event of a failed buyout.  Instead, it required the purchasing party to give a "bond with sufficient security to protect the interests and rights of the plaintiffs and to assure to the plaintiffs the payment of the value of their shares."  (Former § 4658, enacted by Stats. 1947, ch. 1038, § 4658, p. 2389, repealed and added by Stats. 1975, ch. 682, § 7, p. 1516, eff. Jan. 1, 1977.)  It also required the court to "enter a decree for the amount of the award against the shareholders electing to purchase and the surety or sureties on the bond" and permitted the decree to provide in the alternative "for winding up and dissolution of the corporation" if the purchasing parties did not make a timely payment.  (Former § 4659, enacted by Stats. 1947, ch. 1038, § 4659, p. 2389, repealed and added by Stats. 1975, ch. 682, § 7, p. 1516, eff. Jan. 1, 1977.)

In repealing the old statutes and enacting section 2000, the Legislature made the entry of an alternative decree mandatory rather than permissive, reduced the amount of the bond required to the estimated reasonable expenses of the moving parties, and added a remedy for the moving parties to recover those expenses if the purchasing parties did not timely purchase their shares.

_____

Com., Apr. 28, 1975, p. 2.)  In a March 7, 1975 memorandum to Assemblymember John T. Knox, Chair of the Assembly Select Committee on Revision of the Corporations Code, Marsh wrote the legislation "constitutes a complete revision and modernization of the General Corporations Law, which has not been thoroughly revised since its enactment in 1931 . . . ."

(§ 2000, subds. (b), (c).)  These revisions reveal that the purpose of the expense provision was to compensate the moving parties for the attorneys' fees and expenses incurred in the appraisal process where, at the conclusion of the process, the purchasing parties are either unable or unwilling to consummate the buyout. (See Assem. Select Com., Rep. on Revision of the Corporations Code (Dec. 1, 1975) pp. 17-18 ["The requirement for the filing of a bond for the entire (at that point unknown) purchase price at the outset of the appraisal process by the purchasing parties is eliminated; instead, a bond is only required to cover the expenses of the moving party if the purchase is not consummated."].)

Leonard argues that "any injunctive relief issued to *preserve* [the] enterprise is very much part of the buyout process." But that is not true of the injunctive relief here.  The court issued the second and third preliminary injunctions to protect Leonard's interests in the entity defendants from further misconduct by Michael and Joseph.  Because Michael and Joseph engaged in that misconduct throughout the litigation, Leonard would have incurred attorneys' fees seeking additional injunctive relief regardless whether Michael and Joseph invoked the statutory buyout process.  Moreover, Leonard already had a way for protecting his interests from Michael and Joseph's misconduct: his cause of action for breach of fiduciary duty, on which he ultimately prevailed.[7]  If, as the trial court predicted, Michael

---

[7]     We take judicial notice of the March 12, 2019 judgment on Leonard's breach of fiduciary duty cause of action awarding him $20,912,061 in compensatory damages against Michael and Joseph, jointly and severally, $5,000,000 in punitive damages against Michael, and $5,000,000 in punitive damages against Joseph.  Michael and Joseph have appealed from the judgment.

20

and Joseph left "Leonard stuck with the value of the Entity Defendants at dissolution" by failing to consummate the buyout after continually looting the business, Leonard could (and did) recover damages for the devaluation of his interests during the appraisal process through his breach of fiduciary duty cause of action.

Leonard also asserts the "trial court expressly found that the fees incurred to obtain the injunctions were 'incurred *during* the appraisal process.'" That assertion is technically true, and in the strictly temporal sense of "during," the trial court's finding was correct: The fees and expenses Leonard incurred in obtaining the additional injunctive relief against Michael and Joseph "were incurred during the appraisal process," which was occurring at the same time the parties were litigating Leonard's requests for additional injunctive relief. But that does not mean Leonard incurred his injunction-related fees *in* (or as part of) the appraisal process, only that he was incurring the two categories of fees simultaneously. Leonard could have been incurring attorneys' fees on all kinds of things that occurred while the appraisers and the referee were doing their work, such as negotiating a settlement, gearing up for the dissolution of the various entities in the event the buyout procedure failed, and preparing for trial on his breach of fiduciary duty cause of action. But Leonard could not have recovered those fees under section 2000 and the other buyout statutes, even if he incurred them concurrently with the appraisal process. Therefore, the trial court erred in awarding Leonard his attorneys' fees incurred in obtaining injunctive relief.

21

C.    *Admissible Evidence Supported Leonard's Motion for Fees and Expenses*

Michael and Joseph also contend the trial court erred in granting Leonard's motion for fees and expenses because Leonard did not submit admissible evidence in support of his motion. Specifically, they argue that counsel for Leonard's supporting declaration and attached billing records were inadmissible because she failed to sign her declaration "under penalty of perjury." Although counsel for Leonard submitted a supplemental declaration that corrected the defect, Michael and Joseph argue the court should have excluded it because it was filed with Leonard's reply brief and, thus, Michael and Joseph did not have an opportunity to respond to it. This argument lacks merit.

A declaration is inadmissible unless it meets certain requirements, including that it is certified "to be true under penalty of perjury." (Code Civ. Proc., § 2015.5; see *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610.) The initial declaration counsel for Leonard submitted in support of the motion for expenses did not have the required certification. In their opposition to the motion, Michael and Joseph pointed out this defect, stating in a footnote that "Leonard's claimed fees are also unsubstantiated" because his attorney's declaration was "not signed under penalty of perjury as required by . . . Code of Civil Procedure section 2015.5." In his reply papers, counsel for Leonard submitted a supplemental declaration that added the following certification: "I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

A party may cure defects in a supporting declaration where doing so does not prejudice the other side. For example, in *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171 the attorney for a party moving for summary judgment submitted a declaration that omitted a statement that the attorney was competent to testify to the matters stated in the declaration. The party opposing the motion objected, and the attorney submitted a corrected declaration with the reply papers. (*Id.* at pp. 1182-1183.) The court in *Wall Street Network* held the trial court properly admitted the amended declaration because the "original declaration identified the substantive evidence upon which respondents sought summary judgment" and the objecting party "never identified any prejudice from its admission." (*Id.* at p. 1183; see *Finkbeiner v. Gavid* (2006) 136 Cal.App.4th 1417, 1422 [trial court erred in not allowing party to amend a petition where the verification's failure to state it was under penalty of perjury "appear[ed] to be a clerical error"].)

Here, Michael and Joseph have not shown that admitting a supplemental declaration that contained a proper certification, but which was otherwise nearly identical to the original declaration, caused them any prejudice. Therefore, the trial court did not abuse its discretion in admitting the supplemental declaration. (See *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 449 [trial court did not abuse its discretion in considering evidence submitted on reply where the opposing party "had notice of the additional material when they received [the] reply papers and ample opportunity to ask the trial court for permission to submit responsive evidence or to file a sur-reply"]; *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1426 ["[a]bsent any objection to the

23

inclusion of new evidence in [the moving party's] reply brief, the court was entitled to consider the evidence as within the record before it"].)  In addition, Michael and Joseph did not file objections in the trial court to the supplemental declaration or ask the court for leave to submit additional briefing or evidence in response to it, thus forfeiting this argument.  (See Evid. Code, § 353; *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 711.)

> D. *Judge O'Donnell Did Not Err in Ruling on Leonard's Motion Without Having a Second Hearing*

Michael and Joseph argue Judge O'Donnell "lacked the requisite jurisdiction to make the award, without a hearing, under California Code of Civil Procedure [section] 635."  They appear to assert that, because Judge Palazuelos was unavailable, Judge O'Donnell was acting pursuant to Code of Civil Procedure section 635 when she granted Leonard's motion for fees and expenses and that Judge O'Donnell should have held a second hearing on the motion.  Code of Civil Procedure section 635, however, does not apply, and Michael and Joseph forfeited any argument Judge O'Donnell erred in ruling on the motion without having another hearing.

"As a general rule, . . . the final judgment in any case tried without a jury 'must be rendered by the judge who tried the case; it would be a denial of due process for a new judge to render a decision without having heard all of the evidence.'"  (*In re Marriage of Colombo* (1987) 197 Cal.App.3d 572, 581; see *Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 682; 7 Witkin, Cal. Procedure (2020 supp.) Judgment, § 45.)  Code of Civil Procedure section 635 provides an exception to the general

24

rule: "In all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable, the formal judgment or order conforming to the minutes may be signed by the presiding judge of the court or by a judge designated by the presiding judge." The statute "authorizes the signing of a formal judgment by the presiding judge" where "the judge who has heard the evidence has already provided the parties with a *statement of decision*," but not "whenever the judge who has heard the evidence has orally entered a tentative decision, or tentative findings . . . in the minutes." (*Armstrong v. Picquelle* (1984) 157 Cal.App.3d 122, 127; see *Heenan v. Sobati* (2002) 96 Cal.App.4th 995, 1004 ["[u]nder Code of Civil Procedure section 635, presiding judges or their designee may sign a judgment '[i]n all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable'"].)

Code of Civil Procedure section 635 did not apply here, and therefore did not deprive Judge O'Donnell of jurisdiction to rule on Leonard's motion for expenses. Judge Palazuelos did not enter a decision in the minutes before she became unavailable. She provided a tentative decision at the hearing on the motion, but never issued a final decision after taking the matter under submission. Judge O'Donnell did not sign Judge Palazuelos's tentative ruling; Judge O'Donnell wrote her own ruling based on argument and evidence in motion papers she read and considered. Which explains why there is no indication in the record that the presiding judge designated Judge O'Donnell to perform any act under the statute or sign an order conforming to Judge Palazuelos's tentative ruling that Judge O'Donnell was purporting to act under the authority of Code of Civil Procedure

25

section 635 when she ruled on the motion.  The record reflects that, when Judge Palazuelos became unavailable, Judge O'Donnell took over pending matters in the case, including Leonard's motion for expenses.

Michael and Joseph also contend Judge O'Donnell denied them due process by ruling on the motion without giving them an opportunity for a hearing before her.  Michael and Joseph, however, forfeited their contention by failing to ask for another hearing.  Prior to ruling on Leonard's motion for expenses, Judge O'Donnell heard at least two other matters in the case.  She granted a request by the receiver to approve the sale of one of the car dealerships and she heard a request by Leonard to continue the trial date.  Yet despite knowing that Judge Palazuelos was unavailable and that Judge O'Donnell was ruling on matters in the case, Michael and Joseph did not ask Judge O'Donnell to hold a second hearing on the motion for expenses before she issued a decision on that motion.  And after Judge O'Donnell ruled on the motion, Michael and Joseph neither objected they were deprived of a second hearing nor ever asked for such a hearing.  (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court," a rule designed "to encourage parties to bring errors to the attention of the trial court, so that they may be corrected" (fn. omitted)]; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 ["'An appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been but was not presented to the lower court by some appropriate method" because "it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it

26

could easily have been corrected at the trial.'" (Italics omitted.)].) Michael and Joseph easily could have asked Judge O'Donnell for another hearing on Leonard's motion for fees and expenses, either before or after she issued her ruling. They did not.

In any event, Michael and Joseph were not entitled to a hearing on Leonard's motion for fees and expenses, even though Judge Palazuelos had given them one. Because special proceedings are "wholly statutory" (*People v. Barrett* (2012) 54 Cal.4th 1081, 1101), they provide the parties only those rights statutorily specified. (*In re Rose* (2000) 22 Cal.4th 430, 453; *Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1414; *Kim v. Yi* (2006) 139 Cal.App.4th 543, 550; *Low v. Golden Eagle Ins. Co.* (2002) 101 Cal.App.4th 1354, 1367.) The moving party's right to recover fees and expenses under section 2000, subdivision (c),[8] is part of the special proceeding for a statutory buyout. The buyout statutes do not provide for or mention a hearing before the trial court. (See *Abrams v. Abrams-Rubaloff & Associates, Inc.* (1980) 114 Cal.App.3d 240, 247-248 ["[s]ection 2000 does not provide for a full evidentiary hearing," but "contemplates a summary proceeding"].) Rather, on the issue of recovering fees and expenses, the buyout statutes state only that the court "shall" enter a judgment against the purchasing parties for the amount of fees and expenses if they fail to buy the moving party's shares.

---

[8]     And section 17707.03 for limited liability companies and section 15908.2 for limited partnerships.

E.    *Michael and Joseph Do Not Have Standing To Assert the Rights of Their Surety*

Michael and Joseph argue the expense award is "jurisdictionally deficient" because it included their surety as a judgment debtor.  They argue that, because Leonard did not serve a copy of his motion for expenses on the surety, the surety did not have an opportunity to respond to the motion, which violated its due process rights.  Michael and Joseph, however, do not have standing to assert the rights of their surety.  (See *Brenner v. Universal Health Services of Rancho Springs, Inc.* (2017) 12 Cal.App.5th 589, 605 ["As a general rule, a third party does not have standing to bring a claim asserting a violation of someone else's rights."].)

F.    *This Court Does Not Have Jurisdiction To Hear the Challenge by Michael and Joseph to the Order Dissolving the Businesses*

Michael and Joseph challenge, as part of this appeal, the trial court's jurisdiction to issue the July 28, 2017 alternative decree to wind up and dissolve the buyout entities if, as occurred, Michael and Joseph did not purchase Leonard's interests in the businesses.  They contend the court "was *not* empowered to enforce the July 28, 2017 alternative decree because of a lack of subject matter jurisdiction, which rendered the decree void.  Because the decree was void, *ab initio*, Judge O'Donnell was jurisdictionally inept to enforce it by her award of attorney fees and other expenses to Leonard."  In particular, Michael and Joseph argue the court lacked subject matter jurisdiction over the five limited liability companies that were included in the stipulation and order governing the appraisal process but that

28

were not named in Leonard's complaint.  Michael and Joseph, however, cannot challenge the July 28, 2017 order in this appeal.

The July 28, 2017 alternative decree was an appealable order.  (§ 2000, subd. (c); see *Cotton v. Expo Power Systems, Inc.*, *supra*, 170 Cal.App.4th at p. 1376 [under section 2000, "[a]ny shareholder aggrieved by the alternative decree may appeal"]; *Dickson v. Rehmke* (2008) 164 Cal.App.4th 469, 476 [under the predecessor statute to section 17707.03, "an appeal lies from the alternative decree"].)  On September 11, 2017 Michael and Joseph filed a notice of appeal from the July 28, 2017 order, but in May 2018 they each filed a request to dismiss the appeal, and on May 31, 2018 this court dismissed it.  Because neither the requests for dismissal nor this court's May 31, 2018 order stated the dismissal was without prejudice, Michael and Joseph cannot use this appeal from the December 29, 2017 order awarding Leonard his fees and expenses under the buyout statutes to attack the July 28, 2017 order, which is now final.  (See Code Civ. Proc., § 913 ["The dismissal of an appeal shall be with prejudice to the right to file another appeal within the time permitted, unless the dismissal is expressly made without prejudice to another appeal."]; *Estate of Sapp* (2019) 36 Cal.App.5th 86, 100 ["order dismissing [the appellant's] first appeal did not expressly say it was without prejudice, so by operation of law it was *with* prejudice"]; *Patchett v. Bergamot Station, Ltd.* (2006) 143 Cal.App.4th 1390, 1396 [Code of Civil Procedure section 913 precluded a second appeal where the appellant failed to delineate the basis for a stipulated dismissal of the first appeal]; *Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 677 ["[b]ecause this court's dismissal of the first appeal did not expressly provide

29

that it was without prejudice to a subsequent appeal, the trial court's judgment . . . became final and binding"]; see also *In re C.C.* (2009) 172 Cal.App.4th 1481, 1489 ["dismissal of the appeal operates as an affirmance of the underlying judgment or order"].)

Michael and Joseph assert that, because the alternative decree is facially void for lack of jurisdiction, they can attack it at any time. A defendant can attack an order or judgment that is void on its face at any time, either directly, "by a motion under Code of Civil Procedure section 473, subdivision (d), or by a collateral action." (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830; see *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660). But there is no evidence in this record that Michael and Joseph directly attacked the July 28, 2017 alternative decree for dissolution by filing a motion to vacate it under Code of Civil Procedure section 473, subdivision (d), and they dismissed their direct appeal from that order. Nor is there any indication Michael and Joseph have filed a collateral action challenging the order; and if they have, this action is not it.

## DISPOSITION

The order granting Leonard's motion for expenses is modified to strike $561,393.63 in injunction-related attorneys' fees. As modified, the order is affirmed. The parties are to bear their costs on appeal.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.

31